## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                        :

**BRADLEY J. YOUNG,**                         :     Bankruptcy No.  **11-26777-JAD**
                                              :
            Debtor.                           :     Chapter  **13**
_____ X
                                              :
**1200 BUENA VISTA CONDOMINIUMS,**            :
                                              :
            Movant,                           :
v.                                            :     Doc. No.  **16**
                                              :
**BRADLEY J. YOUNG and RONDA J.**             :
**WINNECOUR, ESQUIRE, Trustee,**              :
                                              :
            Respondents.                      :
_____          :
                                              :
**BRADLEY J. YOUNG,**                         :
                                              :
            Movant,                           :
v.                                            :     Doc. No.  **19**
                                              :
**1200 BUENA VISTA CONDOMINIUMS, et. al,**   :
                                              :
            Respondents.                      :
_____ X
                                              :
**BRADLEY YOUNG,**                            :     Adversary No.  **11-2606-JAD**
                                              :
            Plaintiff,                        :
v.                                            :
                                              :
**1200 BUENA VISTA CONDOMINIUMS, et. al.,** :
                                              :
            Defendants.                       :
_____ X


## <u>MEMORANDUM OPINION</u>

Before the Court are a *Motion to Dismiss* filed by 1200 Buena Vista Condominiums

(the "Association") and a *Motion to Extend the Automatic Stay* filed by Mr. Bradley J. Young

(the "Debtor").  Also before the Court, by implication, is Adversary Proceeding No. 11-

2606-JAD (the "Adversary Proceeding") commenced by the Debtor seeking to modify or

avoid a lien held by the Association against a certain condominium unit owned by the

Debtor.  For the reasons set forth below, the *Motion to Dismiss* shall be denied, the *Motion*

*to Extend the Automatic Stay* shall be granted, and the Adversary Proceeding shall be

dismissed.

## I.

This case is the culmination of a series of legal disputes between the Debtor and

the Association.  On December 20, 1985 the Debtor and Theresa A. Sullivan, Debtor's

now estranged wife, purchased property described as "Unit A" in the 1200 Buena Vista

Condominiums (the "Condo Unit").  (See Case No. 11-26777, Doc. #37, *Submission of*

*Additional Documents for Consideration by the Court*, Exhibit "E").[1]  On November 1, 1991,

Ms. Sullivan, for the consideration of one ($1.00) dollar conveyed her interest in the

Condo Unit to the Debtor.  (See id. at Exhibit "F").  The Debtor accepted the deed subject

to the Association's *Declaration of 1200 Buena Vista Condominiums* (the "Declaration") and

the *By-Laws of 1200 Buena Vista Condominiums* (the "By-Laws").[2] (Doc. #37, Exhibit "F").

The condominium consists of three units governed by the Declaration and

By-Laws.  (See Doc. #37, Exhibit "C", Exhibit "D").  Both the Declaration and By-Laws

permit the executive board of the Association to assess a share of expenses against each

unit owner in proportionate liability (the "Assessment"). (See id. at Exhibit "C", Article V;

id. at Exhibit "D", Section VI).  The Declaration and By-Laws also provide that the

Association shall have a lien against the affected unit from the time the Assessment

becomes due.  (See id. at Exhibit "C", Article V, Section 4; id. at Exhibit "D", Section VI(9)).

---

[1] All future docket citations refer to Case Number 11-26777-JAD, unless otherwise
specifically noted.

[2] The deed instrument conveyed to the Debtor and Ms. Sullivan in 1985 contained
identical references to the Declaration and By-Laws.  (See Doc. #37, Exhibit "F").

Sometime in 2000, the Debtor stopped paying his condominium Assessments. <u>In re Young</u>, No. 09-24934JAD, 2011 WL 7110250, at *1 (Bankr. W.D. Pa. March 4, 2011) (*unpublished opinion*). As a result, the Association obtained a judgment against the Debtor in the amount of $14,900.00. <u>See</u> <u>id.</u>

On July 2, 2009, the Debtor filed his first voluntary petition for relief under chapter 13 of the Bankruptcy Code. (<u>See</u> Case No. 09-24934, Doc. #1). In his schedules, the Debtor listed the Condo Unit's value at $45,000 and the Association as holding an "unsecured nonpriority claim" in the amount of $14,900.00. (<u>See</u> Case No. 09-24934, Doc. #12). The Association, in turn, filed a proof of claim in the amount of $23,548.60 (<u>See</u> Case No. 09-24934, Claim #5-2) citing additional expenses incurred by the Association including water, sewage, insurance, and court costs. <u>Young</u>, 2011 WL 7110250, at *1. The Association claimed that pursuant to the Declaration, By-Laws and under state law, it had a lien against the Condo Unit for the unpaid Assessments. <u>See</u> <u>id.</u> The Debtor filed an objection to the Association's claim, and by *Memorandum Opinion* and *Order* entered on March 4, 2011, this Court denied the objection. <u>Id.</u> at *3. On July 21, 2011, the Debtor's case was dismissed without prejudice as a result of the Debtor's failure to file an amended plan per this Court's order. (<u>See</u> Case No. 09-24934, Doc. #98).

On November 3, 2011, the Debtor filed the instant case, his second. (Doc. #1). In this filing, the Debtor lists the fair market value of the Condo Unit at $25,000. (<u>See</u> Doc. #1, "Schedule A"). The Debtor also lists the Association as having a claim in the nature of a "statutory and judgment lien" on the Condo Unit in the amount of $23,548.60. (<u>Id.</u> at "Schedule D"). The Debtor alleges that $21,765.06 of the Association's claim is unsecured. (<u>Id.</u>)

Concurrent with the filing of his bankruptcy petition, the Debtor filed a chapter 13 plan of reorganization which contemplates a "cram down" of the Association's claim pursuant to Section 506 of the Bankruptcy Code. (See Doc. #9, *Chapter 13 Plan Dated November 3, 2011*, p. 3). The Debtor subsequently filed the Adversary Proceeding seeking to cram down the value of the Association's claim as proposed in the plan or, in the alternative, avoiding the Association's lien pursuant to 11 U.S.C. § 522(f). (Adv. No. 11-2606-JAD, Doc. #3, *Amended Adversary Complaint to Avoid the Liens of 1200 Buena Vista Condominiums and 1200 Buena Vista Unit Owners Association, and to Determine the Validity, Priority and Extent of Liens Against the Debtors'* [*sic*] *Real Property, and Other Relief*).

Specifically, the Debtor contends that the Condo Unit has a fair market value of $25,000, encumbered by first priority tax liens of approximately $1,727.74, a bank's mortgage lien of $21,600.90, and the Association's "statutory and judgment lien" in the amount of $23,548.60. (Id. at ¶¶ 15-16). The Debtor concludes that pursuant to 11 U.S.C. § 506(a) the Association's "statutory and judgment lien" may be partially avoided, resulting in the Association holding a secured claim in the amount of $1,671.11 and an unsecured claim in the amount of $21,877.49. (Id.) In the alternative, the Debtor alleges that because the Association's "statutory and judgment lien" impairs the Debtor's allowable interest in his homestead exemption, the Association's lien may be completely avoided pursuant to 11 U.S.C. § 522(f). (Id. at ¶¶ 17-20).

Only four days after the filing, the Association filed its *Motion to Dismiss* and the Debtor filed a *Motion to Extend the Automatic Stay*. (See Doc. ##16, 19). This Court held a combined hearing on the two motions on December 20, 2011. (See Doc. ##35, 36). At the hearing, the parties presented brief arguments concerning whether the above-

captioned bankruptcy proceeding was filed in "good faith."  Central to the parties'
arguments was the issue of whether the Debtor could either modify or avoid the
Association's lien and/or secured claim as contemplated in the Adversary Proceeding.
The Court took the matters under advisement, and directed counsel for the Association
to submit all documents and authority supporting the Association's averment that it
maintains a non-modifiable "security interest" in the Condo Unit.  (See Audio Recording
of Hearing Held in Courtroom D, December 20, 2012 (9:29 - 9:30 AM)).  The Debtor was
also provided with an opportunity to present a brief response to the authority submitted
by the Association.  (See id.)  Following the timely filing of these documents, the matters
are now ripe for adjudication.

## II.

In support of its *Motion to Dismiss*, the Association alleges that the Debtor's
bankruptcy petition must be dismissed for "bad faith."  The Association's primary
argument in support of dismissal is that the Debtor fails to adequately provide for
Movant's claim in this chapter 13 case because the judgment entered in the Debtor's prior
case, which denied the Debtor's objection to the Association's claim, "is res judicata as
to the issue of what must be included in a Chapter 13 Plan as to this creditor, the
Movant."  (See Doc. #16, ¶ 13).  While the Association appears to confuse the related
preclusive doctrines of res judicata (claim preclusion) and collateral estoppel (issue
preclusion), subsequent statements of counsel, indicate that the Association is asserting
only the doctrine of res judicata (claim preclusion).  (See Audio Recording of Hearing Held
in Courtroom D, December 20, 2012 (9:19 - 9:20 AM)).

Res judicata, or claim preclusion, gives preclusive effect to a prior judgment.
Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981) (citations omitted).  The

prerequisites to the application of the doctrine of res judicata are: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008) (quoting Post v. Hartford Ins. Co., 501 F.3d 154, 169 (3d Cir. 2007)).

In the instant matter, the Association is seeking to use the doctrine of res judicata offensively to prevent the Debtor from attempting to avoid or modify the Association's lien. This argument must be rejected as the contemplated "avoidance" and section 506 actions at issue in the instant matter were not the same causes of action litigated in the prior proceeding and were not appropriately "issues that were or could have been raised" with regard to the Debtor's limited objection to the Association's proof of claim. See Federated Dep't Stores, 452 U.S. at 398. As a result, there was no "final judgment on the merits" with regard to the Debtor's attempt at avoidance pursuant to 11 U.S.C. § 522(f)(1) and/or attempt to modify the Association's lien under 11 U.S.C. § 506.

In fact, in the prior action, the Debtor filed an Objection to the Association's proof of claim, seeking to have $8,648.60 of the Association's $23,548.60 claim denied as unauthorized charges. Young, 2011 WL 7110250, at *1. This Court's *Memorandum Opinion* and *Order* denied the Debtor's Objection and concluded that $8,648.60 in "additional expenses" attributable to water/sewage expenses, insurance expenses and counsel fees were part of the Association's allowed claim. Id. at *3. No discussion of lien avoidance or bifurcation of secured claims even occurred in the prior contested matter. In the instant proceeding, the Debtor is not attempting to relitigate his prior claim objection or amend this Court's prior Order. Rather, the Debtor proposes to either avoid or modify the claim that *resulted* from that Order. Thus, res judicata does not apply to bar avoidance or modification of the Association's lien.

**III.**

Concluding that the Debtor is not precluded from attempting to avoid or modify the Association's lien is not dispositive as to the issue of "lack of good faith."  The Association also asserts that the Debtor's refiling of this bankruptcy for the alleged sole purpose of avoiding the Association's lien is an "abuse of the bankruptcy system" which constitutes a "bad faith filing."  (Doc. #16, ¶ 16).

The United States Court of Appeals for the Third Circuit has held that "lack of good faith" may be "cause" for dismissal under 11 U.S.C. § 1307(c).  In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996).  "Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith." Hamm v. Manfredi (In re Manfredi), 434 B.R. 356, 359 (Bankr. M.D. Pa. 2010) (quoting In re Tamecki, 229 F. 3d. 205, 207 (3d Cir. 2000)).    The petitioner must show "good faith" based on the "totality of the circumstances." Lilley, 91 F.3d at 496.  Central to the Association's "lack of good faith" argument is the allegation that the Debtor commenced the instant proceeding without the capability of fully performing a confirmable plan of reorganization. (See Audio Recording of Hearing Held in Courtroom D, December 20, 2012 (9:20 - 9:21 AM)).

The Debtor has simultaneously raised the issue of "good faith" by requesting that this Court extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3)(B) and (C).  (Doc. #19).  As the Debtor's prior case was dismissed within one year of the commencement of this case for failure to file an amended plan as required by this Court's Order, the stay arising in the instant case was to expire thirty (30) days from the petition date; and the case itself was presumptively not filed in "good faith."[3]  11 U.S.C. § 362(c)(3)(A) and (C).

---

[3]  The Association also claims that "bad faith" should be presumed in the instant case because the Court's order in the Debtor's prior case allegedly required the Debtor to provide

(continued...)

Under applicable law, however, the Debtor may rebut this presumption by demonstrating through clear and convincing evidence that under the "totality of the circumstances," the instant case was filed in good faith. See In re Ferguson, 376 B.R. 109, 120-21 (Bankr. E.D. Pa. 2007). Central to this "good faith" analysis are the statutory provisions which examine: (a) whether the Debtor has had a "substantial change" in his financial and/or personal affairs since the dismissal of his previous case, and/or (b) whether the instant case can be concluded "with a confirmed plan that will be fully performed." 11 U.S.C. § 362(c)(3)(C)(i)(III). Cf. Whitaker v. Baxter (In re Whitaker), 341 B.R. 336, 345 (Bankr. S.D. Ga. 2006) ("The appropriate test for rebutting the presumption of 'not in good faith' (i.e., bad faith) is provided in § 362 (c)(3)(C).").

Thus, the crux of the Motion to Dismiss and the Motion to Extend the Automatic Stay is whether the Debtor re-filed the instant chapter 13 case in "good faith." Under the circumstance of this case, one of the central factors in the "good faith" analysis is whether the Debtor has submitted a confirmable plan of reorganization, and is capable of fully performing that plan. See Dye v. Joseph (In re Dye), 346 B.R. 669, 671 (D. Del. 2006) (citing Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999)). See also Lilley, 91 F.3d at 496; 11 U.S.C. § 362(c)(3)(C)(i)(III).

---

[3](...continued)
"adequate protection" to the Association. (See Doc. #21, *1200 Buena Vista Condominiums' Response to Debtor's Motion to Extend the Automatic Stay*, ¶ 4). The Association asserts that because no adequate protection was forthcoming, bad faith should be presumed pursuant to 11 U.S.C. § 362(c)(3)(C)(i)(II)(bb). The record simply does not bear this out. The terms of this Court's prior Order requiring the Debtor to file an amended plan do not contain the requirement that any adequate protection payments or other assurances be made to the Association going forward. (See Case. No. 09-24934, Doc. #84). To the contrary, the Order simply required that pursuant to the Court's *Memorandum Opinion*, the amount listed in the Association proof of claim and "[a]ll post petition condominium charges due and assessable" should be provided for in the amended chapter 13 plan that was to be filed by the Debtor. (See id.)

The plan currently proposed by the Debtor contemplates reducing the amount of the Association's lien. (See Doc. #9, p. 3). Specifically, through the Adversary Proceeding the Debtor is seeking to "cram down" the amount of the Association's lien under 11 U.S.C. § 506 or, in the alternative, avoid the Association's lien entirely pursuant to 11 U.S.C. § 522(f). (See Adv. No. 11-2606-JAD, Doc. #3). The Debtor admits that whether or not he is capable of performing a confirmable plan (including the one currently proposed), depends entirely on his ability to avoid or modify the Association's lien. (See Audio Recording of Hearing Held in Courtroom D, December 20, 2011 (9:28 - 9:30 AM)).

The language of section 522(f) allows a debtor to, "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption. . ., if such lien is (A) a *judicial lien*." 11 U.S.C. § 522(f) (emphasis added). However, if a lien cannot be characterized as a "judicial lien," it is not avoidable pursuant to 11 U.S.C. § 522(f).

Alternatively, 11 U.S.C. § 506(a)(1) states that, "an allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value . . . is less than the amount of such allowed claim... ." 11. U.S.C. § 506(a). However, the  so-called "anti-modification" provision of 11 U.S.C. § 1322(b)(2) only allows for modification of, "the rights of holders of secured claims, *other* than a claim secured only be a security interest in real

property that is the debtor's principal residence. . . ."⁴  11 U.S.C. § 1322(b)(2) (emphasis

added).

The Association claims that because its lien is a security interest (that is, a lien

created by way of an agreement), it is not a judicial lien subject to avoidance by operation

of 11 U.S.C. § 522(f).  Citing the case of <u>In re Robinson</u>, 231 B.R. 30, 32 (Bankr. D.N.J.

1997), the Association further contends that because its lien allegedly arises by way of an

agreement between the parties it is not a mere statutory lien.  As such, the Association

argues that the anti-modification provisions of 11 U.S.C. § 1322(b)(2) preclude the

Debtor's use of 11 U.S.C. § 506 to cram down the Association's secured claim.  The

Debtor on the other hand disputes the legal characterization of the Association's lien.  Of

course, the outcome of this issue can be relevant to the issue of whether this case had

been filed in good faith and whether the Debtor can prosed a confirmable plan in the first

instance.

<u>**IV.**</u>

The Bankruptcy Code identifies and recognizes three types of liens: judicial liens,

security interests, and statutory liens.  A judicial lien is defined as a "lien obtained by

judgment, levy, sequestration, or other legal or equitable process or proceeding."  11

U.S.C. § 101(36).  A "security interest" is defined as a "lien created by an agreement."  11

---

⁴ There is no dispute that the Condo Unit is the Debtor's "principal residence," which
constitutes the only security for the Association's claim.  In addition, the United States Court of
Appeals for the Third Circuit has held that a lender's rights are not subject to the anti-
modification clause of 11 U.S.C. § 1332(b)(2) when the lender is wholly unsecured as a result of
higher priority liens in excess of the value of the property.  <u>In re McDonald</u>, 205 F.3d 606, 613
(3d Cir. 2000).  In the instant matter, the anti-modification clause applies, at least insofar as
the Debtor has admitted that the Association holds an allowed secured claim in the amount of
$1,6711.  (<u>See</u> Adv. No. 11-2606-JAD, Doc. #3, ¶ 16).  Therefore, the issue before this Court
with regard to the Debtor's § 506 action is not whether the Debtor may "strip off" a wholly
unsecured claim, but rather, is whether the Association's maintains a "security interest" in the
Condo Unit subject to the anti-modification provision of 11 U.S.C. § 1322(b)(2).

U.S.C. § 101(51).  Finally, the Bankruptcy Code defines a "statutory lien" as a lien that

arises "solely by force of a statute on specified circumstances or conditions. . . ."  11

U.S.C. § 101(53). To determine whether the Association's lien is "judicial", "statutory" or

is a "security interest", this Court must examine how the Association's lien arose.

<u>A.</u>

The Debtor currently holds a warranty deed (the "Deed") that is subject to the

Association's Declaration and By-Laws.  (<u>See</u> Doc. #37, Exhibit "F").  Specifically, the Deed

conveys the Condo Unit to the Debtor, "*together with* and *subject to* those rights, duties

and obligations as set forth in the aforementioned Declaration of Condominium and as

set forth in the By-Laws of the 1200 Buena Vista Condominium." (<u>Id.</u>) (emphasis added).

Article V, Section 4 of the Declaration states:

> <u>Assessment of Charges</u>.  All sums assessed by resolutions duly
> adopted by the Association against any Unit for the share of Common
> Expenses chargeable to that Unit shall constitute a lien against the affected
> Unit in accordance with the Act and also shall be the personal liability of
> the Owner of the Unit so assessed and shall, until fully paid, constitute a
> lien against such Unit which shall be enforceable as provided in the Act or
> as otherwise permitted by law.[5]

Article VI, Section 1 of the Declaration further states that:

> All present and future Unit Owners and Residents of Units shall be
> subject to and shall comply with the provisions of this Declaration and the
> By-Laws as they may be amended from time to time.  The acceptance of a
> Deed or execution of a lease or contract conveying an interest in, or the
> occupancy of, any Unit shall constitute such agreement.

The Association's Declaration was filed in 1984 in the Office of the Recorder of

Deeds of Allegheny County, PA at Deed Book Volume 6819 Pages 602 et. seq.  (<u>See</u> Doc.

#37, Exhibit "C", p. 22).

---

[5] According to the terms of the Declaration, the "Act" is a defined term which refers to
"the provisions of the Pennsylvania Uniform Condominium Act, 68 Pa. C.S. § 3101 et. seq. . . ."
(Doc. #37, Exhibit "C", Article I, Section 1).

Additionally, the Association's By-Laws state, "[t]he Association shall have a lien on a Unit for any Assessment levied again that Unit from the time the Assessment becomes due together with any interest payable pursuant hereto." (Id. at Exhibit "D", Section VI (9)).  The By-Laws further state that, "[i]n accordance with the provisions of Section 3315 of the Act, such lien shall be prior to all other liens and encumbrances. . ." outside of the exceptions for earlier liens, mortgages, and taxes.[6] (Id.)

In addition to the Declaration and By-Laws, the Association's lien for the unpaid Assessments is also supported by the provisions of the Pennsylvania Uniform Condominium Act referenced by the Declaration and By-Laws.  Section 3315 of Title 68 of the Pennsylvania Consolidated Statutes concerns a "Lien for assessments."  68 Pa. C.S.A. § 3315.  The pertinent parts of section 3315 state:

> (a) General rule.- The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due.  The association's lien may be foreclosed in like manner as a mortgage on real estate.
>
> . . . .
>
> (c) Notice and perfection of lien.- Subject to the provisions of subsection (b), recording of the declaration constitutes record notice and perfection of the lien.

68 Pa C.S.A. § 3315.  Thus, the statutory language not only *automatically* grants the Association a lien from the time the assessment becomes due, but it allows for the lien to be, "foreclosed in like manner as a mortgage on real estate."  68 Pa C.S.A. § 3315(a).

Taking the language of the Declaration, By-Laws and Pennsylvania Condominium Act together, it appears at first glance that the Association's lien is both a "security

---

[6] As in the Declaration, the reference to the "Act" in the By-Laws refers to the "Uniform Condominium Act in effect in the Commonwealth of Pennsylvania." (See Doc. #37, Exhibit "D", Section I).

interest" and a "statutory lien."  However, this Court concludes that the Association's lien must be characterized *solely* as a "security interest," which *cannot* be avoided as a "judicial lien" pursuant to 11 U.S.C. § 522(f), and may *not* be modified as a result of the anti-modification provision of 11 U.S.C. § 1322(b)(2) as a "claim secured only by a *security interest* in real property that is the debtor's principal residence . . .".  11 U.S.C. § 1322(b)(2) (emphasis added).  This conclusion is supported by the narrow definition of what is to be characterized as a "statutory lien" under the Bankruptcy Code.

The legislative history of 11 U.S.C. § 101 indicates that the three types of liens referenced in the Bankruptcy Code are mutually exclusive.  See In re Ramsey, 89 B.R. 680, 681 (Bankr. S.D. Ohio 1988) ("These 'three categories [of liens] are mutually exclusive and are exhaustive except for certain common law liens.' ") (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 312 (1977)).

The full definition of a statutory lien is very narrow and specifically excludes security interests and judicial liens.  In fact, the statute states:

> The term "statutory lien" means lien arising *solely* by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but *does not include* security interest or judicial lien, *whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.*

11 U.S.C. § 101(53) (emphasis added).  In the instant matter it appears that the Association's lien is exactly the type of security interest described in the exclusional portion of the statutory lien definition utilized in the Bankruptcy Code.  In this case, the security interest appears to be created by the Declaration, By-Laws and Deed.  It is also "provided by" the statutory language in 68 Pa. C.S.A. § 3315.  Therefore, because the lien is a "security interest" it cannot also be a "statutory lien" pursuant to the narrow definition of a "statutory lien" as set forth in the Bankruptcy Code.

<u>B.</u>

Obviously, the Debtor disagrees and contends that the Association maintains only a "statutory lien", and that such a lien is, therefore, modifiable pursuant to 11 U.S.C. § 506.  (<u>See</u> Doc. #39, *Debtor's Reply Memorandum of Law on "The Robinson Case"*).  In support, the Debtor alleges that the Declaration is not a "security agreement" because it "pledges no security interest in property . . . nor was it signed by the Debtor."  (Doc. #34, *Debtor's Memorandum of Law in Opposition to Motion to Dismiss of 1200 Buena Vista Condominiums and in Support of the Debtor's Motion to Extend Stay*, pp. 15-16 n.10). Additionally, the Debtor asserts that the By-Laws cannot give rise to a "security agreement."  (<u>See</u> Doc. #39, p. 2).  This Court does not find the Debtor's arguments to be persuasive.

In reviewing the Association's documents and based on the language of the Deed, this Court finds that the Debtor agreed to be bound by the terms set forth in the Association's Declaration and By-Laws.  It appears to this Court that the filing of the Declaration was similar to the filing of a financing statement, which "perfected" the lien by providing notice to the public of the Association's interest in the Condo Unit as collateral for unpaid Assessments.  Further, it appears beyond reasonable dispute that the Deed would qualify as a "security agreement" because it constitutes a  writing, signed by the Debtor, which describes in detail the Condo Unit subject to the Association's lien. <u>Cf</u>. <u>In re Bollinger Corp.</u>, 614 F.2d 924, 928 (3d Cir. 1980) (concluding that in the absence of a signed security agreement courts should "look at the transaction as a whole in order to determine if there is a writing, or writings, signed by the debtor describing the collateral which demonstrates an intent to create a security interest in the collateral.")

The Deed unequivocally conveyed the Condo Unit to the Debtor, "*together with* and *subject to* those rights, duties and obligations as set forth in the aforementioned Declaration of Condominium and as set forth in the By-Laws of the 1200 Buena Vista Condominium." (Doc. #37, Exhibit "F") (emphasis added).  Debtor's signature is clearly written on the deed.  (Id.)  The deed is notarized, and was properly recorded in Allegheny County.  (Id.)  Thus, it appears the Debtor's signature on the Deed, which expressly incorporates and is subject to the terms in the Declaration and By-laws, clearly evidences that the Debtor agreed to the terms giving rise to the Association's lien.  By definition, a lien created by an agreement is a "security interest."  11 U.S.C. § 101(51).

This Court believes that the Supreme Court of Pennsylvania would also conclude that by accepting the Deed following the recording of the Declaration, the Debtor sufficiently manifested his intent to let the Condo Unit stand as security for his obligation to pay the condominium Assessments.  The terms of the Declaration which state that "all present and future Unit owners and Residents of Units" by "[t]he acceptance of a Deed" "shall be subject to and shall comply with the provisions" of the Declaration, indicates that the agreement to pay the Assessments is intended to be a covenant that runs with the land.  (See Doc. #37, Exhibit "C", Article VI).  Pennsylvania courts have long held that when a covenant to pay annual assessments is found to run with the land, successors in title will be bound to the terms of the covenant when they have accepted the deed and have had constructive notice of the covenant and restrictions contained therein.  See Franklin Mills Associates, L.P. v. Nationwide Life Ins. Co., Civ No. 09-3045, 2011 WL 6180758, at *6-7 (E.D. Pa. Dec. 12, 2011) (citing cases, including Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor, 855 A.2d 873, 880 (Pa. 2004)).

In the instant matter there is no dispute that the Debtor had constructive notice of the Declaration by virtue of its recording in the Office of the Recorder of Deeds of Allegheny County, PA.  (See Doc. #37, Exhibit "C" , p. 22).  See also 21 Pa. C.S.A. § 357 ("[t]he legal effect of the recording of such agreements [to convey any rights of or privileges of a permanent nature pertaining to real property] shall be to give constructive notice. . . .")  Thus, the Debtor's argument that there was no "agreement" between him and the Association that his Condo Unit would stand as collateral for unpaid Assessments is not convincing.[7]

C.

The Debtor also posits that this Court should not find the case of In re Robinson, 231 B.R. 30 (Bankr. D.N.J. 1997), cited by the Association for the proposition that the Association has a "security interest" in the Condo Unit, to be persuasive.  The Debtor asserts that the bankruptcy court in Robinson incorrectly "found, under New Jersey law, the condominium association had both a 'consensual lien', based on it [sic] bylaws, and a 'statutory lien' for unpaid assessments."  (Doc. #39, p. 1) (emphasis in original).

As an initial matter, the Debtor misreads the Robinson holding as to the nature of the lien at issue.  Careful examination of footnote 1 in the Robinson case shows that the lien in question was characterized only as a "security interest," not both a "security interest" and a "statutory lien" as is alleged by the Debtor. Id. at 32 n.1 (Bankr. D.N.J.

---

[7] As part of the above conclusion, the Court also rejects what appears to be the Debtor's argument that "agreements" cannot be "'presumed' by what another party says." See Case No. 11-26777-JAD, Doc. #39, p. 2).  The case cited by the Debtor in support of this premise, Cumberland Perry Vocational-Technical School Auth. v. Bogat & Blink, 396 A.2d 433, 435 (Pa. Super 1978) (holding that arbitration cannot be compelled absent an agreement between the parties to the dispute), is inapplicable to the instant matter.  In this case, this Court has already concluded that the Debtor's signature on the Deed, which is a writing describing the property to serve as the collateral, is an "agreement" sufficient to create a "security interest" in favor of the Association.

1997).  The bankruptcy court in <u>Robinson</u> explains that the confusion over the nature of the lien appeared to arise because the "lien is supported both by" the by-laws of the Association and by state law.  <u>Id.</u>  However, immediately after concluding "that the Association's lien is a security interest agreed to by the parties and provided for by statute" the bankruptcy court cites to the provision of the Bankruptcy Code that narrowly defines a "statutory lien" as *specifically excluding* liens that may also be identified as a "security interest" or "judicial lien."  <u>See</u> <u>id.</u> (citing 11 U.S.C. § 101(53)).  Thus, the bankruptcy court in <u>Robinson</u>, implicitly recognizes that when a lien is supported by an agreement and by statute, it must be categorized as a "security interest."

This Court has come to an identical conclusion in the instant matter.  Absent the Debtor's intent to create a security interest in his Condo Unit as evidenced by the Debtor's acceptance of the Deed subject to the Declaration and By-Laws, the Association's lien would be supported solely by the 68 Pa. C.S.A. § 3315 and, therefore, would be properly characterized as a "statutory lien."   However, given the existence of the Debtor's agreement with respect to the conveyance of a security interest, the Association's lien is specifically excepted from being characterized as a "statutory lien" pursuant to the express provisions of 11 U.S.C. § 101(53).

The Debtor also proffers that the <u>Robinson</u> case is "self-contradictory" because while holding that the association's claim was properly characterized as a "security interest" it looked to the state condominium statute to determine the amount and validity of the lien.  (<u>See</u> Doc. #39, p. 2).  This Court disagrees.  The Bankruptcy Code provision which defines a "statutory lien" expressly states that the term "statutory lien" "does *not* include security interest . . . whether or not such interest is *provided by* or is *dependent on* a statute. . . ."  11 U.S.C. § 101(53) (emphasis added).  Thus, this Court does not find

it contradictory that a court would look to the terms of the statute to which a security interest is linked to define its reach, and yet continue to characterize the lien as a "security interest." As a result, the Debtor's observation does not change this Court's analysis with regard to the characterization of the Association's lien in the instant proceeding.

Finally, the Debtor asserts that categorizing the Association's lien as a "security interest" is contrary to this Court's prior conclusion in In re Johnson, 108 B.R. 81 (Bankr. W.D. Pa. 1989), as well as the conclusions reached by other courts which characterize condominium association liens as "statutory liens" under similar circumstances.[8] The flaw in the Debtor's analysis is that the issue of whether a condominium or homeowner association's lien was subject to the anti-modification provisions of 11 U.S.C. § 1322(b)(2) was not before those courts. See e.g., id. at 82.

In Johnson, the question before the court was simply whether a condominium association's lien for unpaid assessments was a "judicial lien" that could be avoided pursuant to 11 U.S.C. § 522(f)(1). Id. The condominium association in that case contended only that it had a statutory lien based on the Uniform Condominium Act. Id. In its one page opinion, the court in Johnson concluded without extensive analysis that the condominium association had a "perfected statutory lien," which was unavoidable as

_____

[8] The Debtor also directs this Court to In re Stern, 44 B.R. 15, 18 (Bankr D. Mass. 1984 (holding that a condominium trustee's lien under Massachusetts law was a statutory lien specifically excepted from status as a preferential transfer); In re Nentwick, 79 B.R. 145, 146 (Bankr. N.D.N.Y. 1987) (finding that a lien for failure to pay common condominium charges is a statutory lien under New York law); and In re Eatman, 182 B.R. 386, 390-91 (Bankr. S.D.N.Y. 1995) (discussing the scope of the statutory lien that arises under New York law for unpaid common condominium charges). Not one of these cases cited by the Debtor concerns whether a condominium lien can be characterized as a "security interest." Additionally, none of the additional cases discuss whether a condominium association's recorded declaration and/or by-laws might give rise to a "security interest," or even indicate whether any such documents existed under the circumstances to create a "security interest."

a "judicial lien" under section 522(f)(1) of the Bankruptcy Code.  Id. The question of whether the condominium association also had a "security interest" in the debtor's condominium unit was simply not at issue and was not discussed.  Id.

In citing cases that generally define condominium association liens as "statutory liens" the Debtor ignores other cases that have found condominium and housing association's liens to be properly characterized as "security interests."  See e.g., In re Beckley, 210 B.R. 391, 393 (Bankr. M.D. Fla. 1997) (holding that a final judgment obtained by a homeowner association against a debtor was not avoidable pursuant to 11 U.S.C. § 522(f)(1) because the debtor's warranty of deed subject to the association's declaration of covenants created a "security interest," not a "judicial lien"); Phillippy v. Corkscrew Woodlands Assoc., Inc. (In re Phillippy), 178 B.R. 67, 68 (Bankr. M.D. Pa. 1994) (holding that a lien for unpaid homeowner association assessments was not avoidable as a "judicial lien," but was a "security interest" created by an agreement resulting from the terms of a declaration of covenants); and In re Bland, 91 B.R. 421, 423 (Bankr. N.D. Ohio 1988) (holding that an assessment payable to a condominium association pursuant to the terms of a declaration is a "security interest" not an avoidable "judicial lien").

Similarly, the Debtor in the instant matter took the Deed to the Condo Unit subject to the language in the Declaration and By-Laws which created the lien.  Thus, the because the Debtor had notice of the provisions which created the lien, there is an agreement which gives rise to the "security interest."

In sum, the lien maintained by the Association for the Debtor's non-payment of assessments is properly characterized as a "security interest" under the Bankruptcy Code.  Thus, the Association's lien is subject to the anti-modification provision of 11 U.S.C. §

1322(b)(2), and is not a "judicial lien" that may be avoided under 11 U.S.C. § 522(f)(1). As a result, any plan or reorganization proposed must propose to pay the Association the full amount of its allowed secured claim, and the Debtor's Adversary Proceeding must be dismissed.

### **V.**

Just because the Association's lien is not subject to avoidance or modification, does not *per se* mean that the Debtor has failed to meet his burden of establishing that this case was filed in "good faith." In making a good faith determination for purposes of dismissal under 11 U.S.C. § 1307(c), the United States Court of Appeals for the Third Circuit has held that courts are to consider the "totality of the circumstances" and highlights the following factors: "the nature of the debt. . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." Lilley, 91 F.3d at 496 (quoting In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992)). Applying these factors to the instant case, this Court finds that there is not a "lack of good faith" which would constitute sufficient cause for dismissal of the Debtor's case under 11 U.S.C. § 1307(c).

With regard to the "nature" of the debt incurred by the Debtor and how that debt arose, the Association makes no assertion that the debt was originally incurred in bad faith or was somehow the product of untoward acts or fraud. There is no question that the bulk of the debt incurred by the Debtor relates to his Condo Unit with the Debtor's schedules evidencing in excess of $46,000 in secured claims payable to the mortgagee bank, the Association, and municipal taxing authorities. However, the Debtor does list

unsecured claims in excess of $41,000 owed to various unsecured creditors, leading the Court to believe that the Debtor has a purpose for filing beyond simply frustrating the collection efforts of the Association.

Supporting this same result is the apparent candor with which the Debtor has identified his obligations. There was no accusation even lodged by the Association that the Debtor's schedules and statement of financial affairs are somehow inaccurate or incomplete. It is true that the Association's lien has been the source of an acrimonious relationship between the Debtor and the owner of the other two condominium units, Mr. Paul Georg, but there is no evidence that the Debtor has not been forthcoming with the Bankruptcy Court or his creditors at large.

With regard to the timing and motive of the Debtor's bankruptcy petition, as well as the Debtor's treatment of creditors and how his actions have affected them, this Court once again finds that the Debtor has met his burden of proving good faith. It is undisputed that the Debtor filed for bankruptcy protection on the eve of the scheduled sheriff's sale of his Condo Unit. (See Audio Recording of Hearing Held in Courtroom D, December 20, 2011 (9:14 - 9:15 AM)). The Association contends this is indicative of bad faith. (Doc. #21, *1200 Buena Vista Condominiums' Response to Debtor's Motion to Extend the Automatic Stay Under 11 U.S.C. § 362(c)(3)(B) and (C)*, ¶ 10). However, it is well established that "[f]iling a bankruptcy petition on the eve of foreclosure does not necessarily constitute bad faith." In re Falotico, 231 B.R. 35, 40-41, (Bankr. D.N.J. 1999) (citing In re Hollis, 150 B.R. 145, 149 (D. Md. 1993)). Further, there is no *per se* rule against multiple filings. See id. at 40.

The case before the Court is only the Debtor's second filing. The Debtor's first case was dismissed *without prejudice* because of his failure to file an amended plan of

reorganization after his prior counsel of record moved to withdraw from the case.  (See Case No. 09-24934-JAD, Doc. ##95, 98).  The Debtor filed his schedules and has proposed a plan of reorganization based on a flawed, but arguably reasonable attempt to modify or avoid the Association's lien.  While the Debtor's filing did occur on the eve of a sheriff's sale, this Court finds that under the circumstances the Debtor's second filing does not warrant a bad faith dismissal.

As described above, the fact that the Debtor is unable to either modify or avoid the Association's lien, was not so readily apparent from the outset of this case so as to support a finding of bad faith.   The fact is that the legal issues brought forth by these proceedings were novel- at least in this judicial district.  Additionally, the Association's *Motion to Dismiss* was filed only four days after the Debtor's bankruptcy petition and first proposed plan of reorganization were filed.  Now that this Court has held that the Debtor cannot modify or avoid the Association's lien, the Debtor deserves an opportunity to try and put forth a confirmable plan, albeit without modification of the Association's lien. See In re Martorana, Case. No. 07-13861bf, 2008 Bankr. LEXIS 1460, at *13 (Bankr. E.D. Pa. Apr. 11, 2008) (providing debtor with ten days to propose a viable chapter 13 plan, after finding a debtor did not meet his burden to demonstrate the feasability of his amended plan and the trustee had met his evidentiary burden for dismissal under 11 U.S.C. § 1307(c)).  In fact, the Association concedes, that if the Debtor submitted a plan providing for surrender of the Condo Unit and payment of other debts over time, it is, "possible, Your Honor, that that might be confirmable. . . ."  (See Audio Recording of Hearing Held in Courtroom D, December 20, 2011 (9:24 - 9:26 AM)).

As a result of the serious nature of a dismissal for "bad faith," the conditions under which such dismissal may occur are to be narrowly construed.  See Perlin v. Hitachi

Capital Am. Corp. (In re Perlin), 497 F.3d 364, 373 (3d Cir. 2007) ("[A] finding of lack of

good faith 'should not [be] lightly infer[red].' . . . [D]ismissal should be 'confined carefully'

and utilized only in 'egregious cases that entail concealed or misrepresented assets

and/or sources of income, lavish lifestyles, and intention to avoid a large single debt

based upon conduct akin to fraud, misconduct or gross negligence.' ") (quoting Tamecki

v. Frank (In re Tamecki), 229 F.3d 205, 208 (3d Cir. 2000)).  In viewing the totality of the

circumstances, the Debtor's actions do not meet the high standard for a bad faith

dismissal.

## VI.

In the instant matter, the Debtor has successfully rebutted the presumption of bad

faith that arises in the instant case pursuant to 11 U.S.C. § 362(c)(3)(C).  The test for

proving "good faith" when considering a motion to dismiss and a motion to extend the

automatic stay are essentially the same.  See In re Washington, 443 B.R. 389, 395

(Bankr. D.S.C. 2011) ("The tests for good faith that courts have used in other contexts,

such as in considering case dismissal or plan confirmation, have also been found to apply

in the context of a motion to extend the automatic stay.") (citing In re Thomas, 352 B.R.

751, 756 (Bankr. D.S.C. 2006)).  Thus, the Debtor has also met his standard to extend

the stay.  An examination of the statutory requirements for rebutting the presumption of

"bad faith" to extend the stay also supports this conclusion.

According to the Debtor's schedules, filed under penalty of perjury, the Debtor has

increased his gross monthly income since his last filing by the amount of approximately

$173.00, and has increased his "disposable" income by $65.49.  (See Doc. #1, "Schedules

I-J").  Further, the Debtor obtained an appraisal which places the fair market value of the

Condo Unit at $25,000.  (See Doc. #19, ¶ 7(b)).  This revised appraisal figure opened the

door to the Debtor filing the Adversary Proceeding, through which the Debtor sought to modify or avoid the Association's lien.  (Id. at ¶¶ 9-10).  While this Court has concluded that the Debtor is without the ability to modify or avoid the lien, the revised appraisal figure clearly represented "changed circumstances" warranting the filing of a new bankruptcy case.  While there is no guaranty of success, the additional income of the Debtor can also form a basis to pay creditors something in a chapter 13.  Thus, the Debtor has highlighted a sufficient change of circumstances to grant the Debtor's request to extend the automatic stay.

## VII.

For the reasons set forth above, the *Motion to Dismiss* shall be denied and the *Motion to Extend Automatic Stay* shall be granted.  As this Court has concluded that the Debtor is not permitted to avoid or modify the Association's "security interest," the Adversary Proceeding shall be dismissed.  The Debtor shall also be ordered to file an amended chapter 13 plan consistent with this *Memorandum Opinion*.

**Dated**: March 30, 2012              /s/ Jeffery A. Deller
                                  **JEFFERY A. DELLER**
                                  U.S. Bankruptcy Judge

**CASE ADMINISTRATOR TO SERVE:**
       Phillip S. Simon, Esq.
       S. James Wallace, Esq.
       Regina M. Sestak, Esq.
       Daniel D. Regan, Esq.
       Jeffrey R. Hunt, Esq.
       Therese Green, PNC Bank, N.A.
       Helen P. Pudlin, Esq., PNC Bank, N.A.
       Ronda J. Winnecour, Esq., Chapter 13 Trustee
       Office of the United States Trustee