IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRADLEY J. YOUNG,

        Appellant,                              12cv0786
                                                        **ELECTRONICALLY FILED**

        v.

1200 BUENA VISTA CONDOMINIUMS,
1200 BUENA VISTA UNIT OWNERS
ASSOCIATION, CITY OF PITTSBURGH,
COUNTY OF ALLEGHENY, PNC BANK,
N.A.,

        Appellees.

**Memorandum Opinion re: Appeal from Bankruptcy Court (Doc. No. 1)**

**I. Introduction**

Bradley J. Young ("Young") appeals from a Final Order of the United States Bankruptcy Court for the Western District of Pennsylvania dismissing his adversarial proceeding against 1200 Buena Vista Condominiums, *et al* ("Buena Vista").[1]  Doc. Nos. 1 and 1-7.[2]  The Bankruptcy Court held that the lien held by Buena Vista was a security interest, and not a statutory lien, within the meaning of the Bankruptcy Code. *In re Young* ("*Young II*"), 467 B.R. 792, 800-05 (Bankr. W.D. Pa. 2012).  Young originally filed for Chapter 13 bankruptcy in 2009 ("2009 bankruptcy proceeding").  Doc. No. 6, 23.  The Bankruptcy Court dismissed the case without prejudice in July, 2011.  *Id*., 24.  Young then filed for Chapter 13 bankruptcy in November, 2011 ("underlying bankruptcy proceeding").  Doc. No. 7, 10-11.  That same month,

---

[1] The Bankruptcy Court issued a Memorandum Opinion in support of the Order which is reported at *In re Young* (*"Young II"*), 467 B.R. 792 (Bankr. W.D. Pa. 2012).

[2] The Order was also entered in the underlying bankruptcy proceeding. *In re Young*, Bankr. W.D. Pa. No. 11-26777, Doc. No. 53.

Young filed an adversarial proceeding in the Bankruptcy Court, which attempted to partially avoid the lien held by Buena Vista,[3] or in the alternative sought relief under 11 U.S.C. § 522(f). *Id*. at 27. The Bankruptcy Court dismissed the adversarial proceeding. Doc. No. 1-7; *Young II*, 467 B.R. 792. Young appealed arguing that the Bankruptcy Court erred in characterizing the lien held by Buena Vista as a security interest rather than a statutory lien. For the reasons that follow, the Court agrees with Young and therefore, the decision of the Bankruptcy Court will be REVERSED.

**II. Jurisdiction and Standard of Review**

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 157.[4] Young sought certification from the Bankruptcy Court to file a direct appeal to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 158(d)(2)(A). Doc. No. 1-10. The Bankruptcy Court denied the request. Doc. No. 1-12. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

The standard of review is the same for the District Court and for the Court of Appeals, both of which review findings of fact for clear error and exercise plenary review over questions of law. *In re Mintze*, 434 F.3d 222, 227-28 (3d Cir. 2006); *In re Schick*, 418 F.3d 321, 323 (3d Cir. 2005). When considering a mixed question of fact and law, the issue must be broken down into its component parts, with underlying questions of fact being reviewed for clear error and

---

[3] Young admits that at least a portion of Buena Vista's lien is secured if it is a statutory lien. He is attempting to avoid the remainder of the lien by converting it from a secured debt to an unsecured debt.

[4] On October 16, 1984, the Board of Judges of the United States District Court for the Western District of Pennsylvania issued an Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, which referred virtually all cases arising under Title 11 to the Bankruptcy Court of the Western District of Pennsylvania.

underlying questions of law being reviewed *de novo*. *Hornick v. I.R.S.*, 252 B.R. 897, 899 (W.D. Pa. 2000) (Lee, J.) (citing *In re Brown*, 951 F.2d 564 (3d Cir. 1991)).

**III. Factual Background**

There are no disputes with respect to the facts of this case. Young and his ex-wife jointly conveyed to Young, individually, the deed for the condominium as issued on November 1, 1991.[5] Doc. No. 8, 19. The deed provided that it was, "[t]ogether with and subject to those rights, duties and obligations as set forth in the aforementioned Declaration of Condominium and as set forth in the By–Laws of the 1200 Buena Vista Condominium." *Id*.

The Declaration of Condominium provides, in relevant part:

> Assessment of Charges. All sums assessed by resolutions duly adopted by the Association against any Unit for the share of Common Expenses chargeable to that Unit shall constitute a lien against the affected Unit in accordance with the Act[6] and also shall be the personal liability of the Owner of the Unit so assessed and shall, until fully paid, constitute a lien against such Unit which shall be enforceable as provided in the Act or as otherwise permitted by law.
>
> * * *
>
> All present and future Unit Owners and Residents of Units shall be subject to and shall comply with the provisions of this Declaration and the By–Laws as they may be amended from time to time. The acceptance of a Deed or execution of a lease or contract conveying an interest in, or the occupancy of, any Unit shall constitute such agreement.

*Id*., 17; Bankr. W.D. Pa. No. 11-26777, Doc. No. 37-3, 15. The By-Laws provide, in relevant part:

> Lien for Assessment- The Association shall have a lien on a Unit for any Assessment levied against that Unit from the time the Assessment becomes due together with any interest payable pursuant hereto. The Association's lien may be foreclosed in like manner as a mortgage on real estate. If an

---

[5] The deed was for the condominium unit and a 37% interest in the common elements appurtenant thereto. The Court will collectively refer to these holdings as the condominium.

[6] Both the Declaration of Condominium and the By-Laws define the "Act" as the Pennsylvania Uniform Condominium Act, 68 Pa. C.S. § 3101 *et seq*.

3

> Assessment is payable in installments, the full amount of the Assessment becomes effective as a lien from the time the first installment thereof becomes due. In accordance with the provisions of Section 3315 of the Act, such lien shall be prior to all other liens and encumbrances of a Unit except [certain exceptions relating to mortgages and taxes.]

*Id*., 18. Sometime during the year 2000, Young stopped paying his assessment, and on February 27, 2009, Buena Vista obtained a judgment against Young in the amount of $14,900. *Young II*, 467 B.R. at 795-96 (citing *In re Young* ("*Young I*"), 2011 WL 7110250, *1 (Bankr. W.D. Pa. March 4, 2011)). The judgment, however, remained unpaid. During the 2009 bankruptcy proceeding, Young filed an objection to the lien of Buena Vista which was denied by the Bankruptcy Court.[7] *Young I*, 2011 WL 7110250, *3.

In the underlying bankruptcy proceeding, Young admitted that the feasibility of his Chapter 13 plan was contingent on a large percentage of Buena Vista's lien being avoidable.[8] *Young II*, 467 B.R. at 799 (citing recording of oral argument before the Bankruptcy Court). This case presents the issue of whether the condominium lien that Young is trying to partially avoid is a statutory lien or security interest under the Bankruptcy Code. While Young, the appellant, argues that the Bankruptcy Court erred in concluding that the condominium lien was a security interest and thus was not (partially)

---

[7] Although the original judgment amount was $14,900, because it remained unpaid, approximately $25,000 is now due and owing; although, the exact amounts are not relevant to this appeal.

[8] The parties agree that the condominium is Young's principal residence. *Young II*, 467 B.R. at 799 n.4.

4

avoidable, Buena Vista, the appellee, contends that the Bankruptcy Court was correct in its assessment of the lien.[9]

**IV. Discussion**

This case raises a question of statutory interpretation with respect to 11 U.S.C. § 101(53) and its interaction with 68 Pa. C.S. § 3315. As the United States Supreme Court has stated, "[i]nitially, it is worth recalling that Congress worked on the formulation of the [Bankruptcy] Code for nearly a decade. It was intended to modernize the bankruptcy laws, [] and as a result made significant changes in both the substantive and procedural laws of bankruptcy." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)(citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52-53).

> As the Bankruptcy Court in this case aptly stated (and the parties do not dispute):
>
> The Bankruptcy Code identifies and recognizes three types of liens: judicial liens, security interests, and statutory liens. A judicial lien is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A "security interest" is defined as a "lien created by an agreement." 11 U.S.C. § 101(51). Finally, the Bankruptcy Code defines a "statutory lien" as a lien that arises "solely by force of a statute on specified circumstances or conditions, [or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.]" 11 U.S.C. § 101(53).

*Young II*, 467 B.R. at 800.

> The United States Supreme Court has noted that:
>
> In such a substantial overhaul of [secured creditors and secured claims], it is not appropriate or realistic to expect Congress to have explained with particularity each step it took. Rather, as long as the statutory scheme is

---

[9]Young raises three (3) main arguments on appeal, all of which are premised upon the Bankruptcy Court's assessment of the condominium lien: (1) the lien should have been characterized as a statutory lien; (2) the lien was not a covenant that runs with the land; and, (3) alternatively, the lien can be avoided even if it is a security interest.

5

>   coherent and consistent, there generally is no need for a court to inquire
>   beyond the plain language of the statute.

*Ron Pair Enterprises*, 489 U.S. at 240-41.

### A. Statutory Liens and Security Interests are Mutually Exclusive

A *prima facie* issue is whether the lien in this case can be *both* a security interest and a statutory lien under the Bankruptcy Code. As with all questions of statutory interpretation, the statute's language is the first thing that must be examined in determining if the liens are mutually exclusive. *Ron Pair Enterprises*, 489 U.S. at 241 (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985)). Title 11 does not contain any provision which states that the three types of liens either are, or are not, mutually exclusive. *See generally* 11 U.S.C. § 101 *et seq*.

Thus, it is appropriate to examine the legislative history of the Bankruptcy Code to determine whether Congress intended that the three types of liens be mutually exclusive. The legislative history to the Code explicitly states that these "three categories are mutually exclusive and are exhaustive except for certain common law liens." H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977), 1978 U.S.C.C.A.N. 5963, 6269; *see also Young II*, 467 B.R. at 801; *In re Aikens,* 87 B.R. 350 (Bankr. E.D. Pa. 1988). Because condominium liens are a creation of statute, 68 Pa. C.S. § 3315, they cannot be common law liens. *In re Chen*, 351 B.R. 355, 361 (Bankr. E.D. Va. 2006). Thus, the lien at issue in this case must either be a statutory lien, a judicial lien, or a security interest. It cannot be both a statutory lien and a security interest.[10]

### B. Condominium Liens Automatically Arise Under Pennsylvania Law

In *Gateway Towers Condominium Assoc. v. Krohn*, 845 A.2d 855 (Pa. Super. 2004), the Pennsylvania Superior Court held that a condominium lien could be recovered both by suit and

---

[10] Although this holding would seem to resolve Young's argument that the lien could be partially avoided even if it was a security interest, the Court does not reach that issue as it is moot because of the Court's holding on the characterization of the lien.

6

by foreclosure. *Id*. at 860.  However, *Gateway* dealt with a special condominium, one covered by both the Unit Property Act and the Uniform Condominium Act. *Id*; 68 Pa.C.S. § 3102(a.1). As 1200 Buena Vista was formed after October 30, 1980, it is covered only by the Uniform Condominium Act.

When the Pennsylvania General Assembly passed the Uniform Condominium Act and repealed the Unit Property Act, the language relating to the collection of assessments was drastically changed.  1980 P.L. 286, No. 82.  Under the Unit Property Act:

> Any charge assessed against a unit may be enforced by a suit by the council acting on behalf of the unit owners in an action of assumpsit: Provided, That each suit when filed shall refer to this act and to the unit against which the assessment is made and the owner thereof and shall be indexed by the prothonotary as lis pendens. Any judgement against a unit and its owner shall be enforceable in the same manner as is otherwise provided by law.

1963 P.L. 196, No. 117 (repealed).  Under the Uniform Condominium Act, which is applicable to the instant dispute, "[t]he association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due." As the Bankruptcy Court in this case noted, "the statutory language not only *automatically* grants the Association a lien from the time the assessment becomes due, but it allows for the lien to be foreclosed in like manner as a mortgage on real estate." *Young II*, 467 B.R. at 801 (citing 68 Pa. C.S. § 3115 (a)) (emphasis in original) (internal quotation marks omitted).

The change between writs of assumpsit and foreclosure was meant to simplify the process by which a condominium association could recover condominium assessments that were past due and to make clear that condominium liens take precedence over most other liens and encumbrances.  (*See* 68 Pa. C.S. § 3315 Pennsylvania Comment and Comment by the National Conference of Commissioners on Uniform State Laws.)

7

Furthermore, under 68 Pa.C.S. § 3205(6) the Declaration of Condominium must include the way in which a condominium assessment will be assessed. Thus, every condominium created in Pennsylvania since October 30, 1980, includes within the declaration a provision regarding assessments. Therefore, contrary to the arguments put forth by Buena Vista, there is no leeway within the Act for this language to be omitted from the condominium's governing documents. Thus, if Buena Vista's position were to be adopted by this Court, it would mean all condominium liens would be security interests and not statutory liens, a finding which would be contrary to the statute's intent.

### C. Condominium Liens Do Not Fall Within the Exclusional Clause

A statutory lien is defined as a:

> [L]ien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11. U.S.C § 101(53). There is no dispute as to whether the lien arises "by force of statute." There is also no dispute that this is not a "lien of distress for rent." Rather, the dispute is whether the lien arises "solely" by force of statute or is a security interest that is "provided by or is dependent on a statute." The Bankruptcy Court referred to the latter as the "exclusional clause."

### 1. Courts are Split on Whether Condominium Liens are Statutory Liens

The parties cite a number of cases in support of their respective positions (as does the Bankruptcy Court in its decision). Although the Bankruptcy Court treated this as a question of first impression within this district, this Court respectfully disagrees and finds (contrary to the

8

Bankruptcy Court) that *In re Johnston*, 108 B.R. 81 (Bankr. W.D. Pa. 1989) is applicable and persuasive authority.[11] *Young II*, 467 B.R. at 806.

In *In re Johnston*, the debtor attempted to avoid the condominium lien under 11 U.S.C. § 522(f)(1) by arguing that it was a judicial lien. *In re Johnston,* 108 B.R. at 82. The Bankruptcy Court in *Johnston* held that the lien was a "perfected statutory lien" and not a judicial lien. *Id*. The Bankruptcy Court in the instant case addressed *Johnston* and distinguished it by stating that the question before the Bankruptcy Court in *Johnston* was whether the lien was a judicial lien and was not presented with the question of whether the lien was a security interest.[12] *Young II*, 467 B.R. at 804-05. Buena Vista makes similar arguments in its Brief. Doc. No. 9, 5.

As the Bankruptcy Court in this case noted, the ultimate question before the Bankruptcy Court in *Johnston* was whether or not the lien was a judicial lien. *Young II*, 467 B.R. at 804-05. In *Johnston*, the creditor argued that the lien was *either* a statutory lien or a security interest. Brief of East Hills Assoc. No. 1, *In re Johnston*, 89-20247[13] (Bankr. W.D. Pa. Nov. 1, 1989), 4-

---

[11] The Court recognizes that *Johnston*, while persuasive, does not constitute binding authority.

[12] The Bankruptcy Court also distinguished three other cases: *In re Stern*, 44 B.R. 15, 18 (Bankr. D. Mass. 1984); *In re Nentwick*, 79 B.R. 145, 146 (Bankr. N.D.N.Y. 1987); and *In re Eatman*, 182 B.R. 386, 390–91 (Bankr. S.D.N.Y. 1995). The Bankruptcy Court noted that:
> Not one of these cases [] concerns whether a condominium lien can be characterized as a security interest. Additionally, none of the [] cases discuss whether a condominium association's recorded declaration and/or bylaws might give rise to a security interest, or even indicate whether any such documents existed under the circumstances to create a security interest.

*Young II*, 467 B.R. at 804 n.8 (internal quotation marks omitted).

[13] The documents filed in the case list a case number of 89-247; however, the Clerk's Office of the Bankruptcy Court for the Western District of Pennsylvania has the file under case number 89-20247. The 2 at the beginning of the five digit case number signifies that the case was filed in the Pittsburgh Division.

7. The Bankruptcy Court in *Johnston* considered whether the lien was a statutory lien or a security interest, and without elaboration, held that it was a statutory lien.[14]

The condominium governing documents in *Johnston* included many of the same provisions relied upon by the Bankruptcy Court for its determination that the lien in the instant case is a security interest. For example, the Membership Agreement stated, in relevant part:

> For each and every default of the Member in any payment to become due and payable to the Association, the Member [] does hereby empower any attorney of any court of record within the United States or elsewhere, to appear for the member and with or without declaration filed, confess judgment against the Member [] and in favor of the Association [] for any sum or sums in default . . . with release of all errors and without stay of execution and inquisition and extension upon any levy of real estate is hereby expressly waived, and condemnation agreed to and exemption of any and all property from levy or sale by virtue of any exemption law now in force or which may hereafter be passed is also expressly waived by the Member . . . .

Brief of East Hills Assoc. No. 1, *In re Johnston*, 89-20247 (Bankr. W.D. Pa. Nov. 1, 1989), App'x A, ¶3. This language is similar to language that would be found in a security agreement, as is the language at issue in the instant case. The language in the Membership Agreement also referred to governing statutes for its rights with respect to the lien as in the case at bar. Thus, *Johnston* is a case both factually and legally similar to the case before this Court. The Bankruptcy Court in *Johnston* decided that the lien was a statutory lien, explicitly rejecting the argument that it was a judicial lien and implicitly rejecting the argument that it was a security interest.

---

[14] The Court in *Johnson* ruled that the lien was statutory, despite the fact that the creditor had submitted the Order in *In re McCree (McRee v. Household Financial Corp.)*, 88-20884 (Bankr. W.D. Pa. May 3, 1989). In that Order, the Bankruptcy Court in *McCree* declined to address the issue of whether the lien was a statutory lien or security interest, and instead ruled that it was not a judicial lien. Therefore, against the backdrop of the *McCree* case, the Court in *Johnson* was presumably aware that it had the option to refrain from addressing the distinction between a statutory lien and a security interest, and chose not to do so.

The Bankruptcy Court in this case also cited *In re Robinson*, 231 B.R. 30, 32 n.1 (Bankr. D. N.J 1997), as persuasive authority for its holding that the association assessments should be considered security interests.[15] *Young II*, 467 B.R. at 803.  The Court agrees with the Bankruptcy Court that *Robinson* does imply that association assessments should be considered as security interests instead of statutory liens.  However, just like the other cases cited by the Bankruptcy Court, the issue was not presented as a central issue for the Court in *Robinson* to consider.  Footnote 1 shows that the arguments for the condominium lien being treated as a security interest and as a statutory lien were being made by the same party.[16]  *Robinson*, 231 B.R. at 30 n.1.  Thus, *Robinson* is no more persuasive than *Johnston*.

**2. Plain Language**

The plain language of the statute includes situations like the one presented in this case. Although the parties focus on the exclusional clause at the end of the definition, the first phrase of the definition is equally important.  A statutory lien is one arising "solely by force of statute." As the Bankruptcy Court noted, "the statutory language not only *automatically* grants the Association a lien from the time the assessment becomes due, but it allows for the lien to be foreclosed in like manner as a mortgage on real estate " *Young II*, 467 B.R. at 801 (emphasis in original).  In other words, Buena Vista did not need to take any action after the failure of Young to pay his assessment in order for the lien to arise.

---

[15] The Bankruptcy Court also cited three other cases: *In re Beckley*, 210 B.R. 391, 393 (Bankr. M.D. Fla.1997); *Phillippy v. Corkscrew Woodlands Assoc., Inc. (In re Phillippy)*, 178 B.R. 67, 68 (Bankr. M.D. Pa. 1994); and *In re Bland*, 91 B.R. 421, 423 (Bankr. N.D .Ohio 1988).  As with those cases discussed in n.11, *supra*, the Courts in those cases merely stated that the lien was a security interest while deciding a different issue.

[16] Young argues throughout his brief that Buena Vista had argued that the condominium lien was a statutory lien for two years prior to changing course and arguing that it is a secured interest.  To the extent that Young argues that this precluded a finding that the condominium lien is a secured interest, the Court rejects that argument.

11

When the exclusional clause, which reads "whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute," is examined in this light, its broader context becomes apparent. The exclusional clause is meant to ensure that not all liens become statutory liens merely because a provision of the Code allows for parties to bargain for a particular lien.

If the Court were to apply the language as Buena Vista suggests, statutory liens would only be a theoretical possibility. An individual lienholder is not able to recover simply by possessing the lien. Rather, the lienholder must go to court and obtain a judgment against the debtor in order to be able to execute on the lien. This would leave creditors the choice of being able to recover by seeking a judgment or maintaining a statutory lien and not being able to recover.

Both the plain language of 11 U.S.C. §§ 101 (36), (51), and (53) and the entire statutory scheme reveals that the classification of a lien depends on how the lien first arose. Thus, if a lien first arises by statute and then there is later action that could be considered the formation of a security interest or a judicial lien, the lien remains a statutory lien. If a lien originally arose via a security agreement and action is later taken to obtain a judgment the lien remains a security interest.

Here, the lien is a statutory lien, because it originally arose solely by the force of statute. While subsequent events may have given the lien the appearance of a security interest and/or a judicial lien, the nature of the lien did not change from a statutory lien, because the classification of a lien depends on how it first arose. *Cf. In re King*, 208 B.R. 376, 379 (Bankr. D. Md. 1997) ("Whether a lien is judicial or statutory is determined by how the lien arises.").

### 3. The Declaration of Condominium is Not a Covenant Running with the Land

The Bankruptcy Court alternatively found that the condominium lien was a covenant that ran with the land, and thus was a security interest. *Young II*, 467 B.R. at 802-03. However, this holding wholly relies upon the argument made regarding the security interest in the first place. The two arguments cannot be separated and offered as distinct reasons for a finding that the condominium lien is a security interest. The section referred to by the Bankruptcy Court, and quoted *supra*, merely provides notice to individuals that they will have to comply with the Declaration of Condominium. It in no way imposes any other obligation on the owner and does not in and of itself create a lien. Rather, the lien is either created by statute, as this Court has found that it is, or by the operation of a separate section within the Declaration of Condominium and By-Laws, as the Bankruptcy Court held.

**V. Conclusion**

There is a split within the Bankruptcy Court in this District and at least seven other Bankruptcy Courts outside this Circuit as to whether condominium liens are statutory liens or secured interests. *Compare, e.g., In re Johnston*, 108 B.R. at 82 *with Young II*, 467 B.R. at 800. This Court holds that the condominium lien in this case is indeed a statutory lien and therefore, follows the *Johnston* case, as well as *In re Stern*, 44 B.R. at 18; *In re Nentwick*, 79 B.R. at 146; and *In re Eatman*, 182 B.R. at 390–91. For the foregoing reasons, the Court respectfully finds that the Bankruptcy Court erred in holding that the condominium lien was a security interest rather than a statutory lien. Thus, the decision of the Bankruptcy Court will be REVERSED. The case will be REMANDED to the Bankruptcy Court for further proceedings consistent with this Opinion.

An appropriate Order follows.

                                                s/ Arthur J. Schwab
                                                Arthur J. Schwab
                                                United States District Judge

cc:     All counsel of record