# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| BRADLEY J. YOUNG ) | Bankruptcy No. 11-26777 JAD |
| Debtor ) | Chapter 13 |
| ) | |
| BRADLEY J. YOUNG ) | |
| Plaintiff, ) | |
| v. ) | Adversary No. 11-2606 JAD |
| 1200 BUENA VISTA CONDOMINIUMS, ) | |
| 1200 BUENA VISTA UNIT OWNERS ) | |
| ASSOCIATION, CITY OF PITTSBURGH, ) | |
| COUNTY OF ALLEGHENY, and ) | |
| PNC BANK, N.A. ) | |
| Defendants ) | |

### DEBTOR'S MOTION TO APPROVE COMPROMISE OF THE CLAIM OF 1200 BUENA VISTA CONDOMINIUMS AND 1200 BUENA VISTA UNIT OWNERS ASSOCIATION AND OTHER MATTERS BY SETTLEMENT

AND NOW, comes the Debtor, Bradley J. Young ("Young"), by and through his counsel, Phillip S. Simon, and requests the Court to enter an Order approving a settlement entered into between the Debtor and 1200 Buena Vista Condominiums and 1200 Buena Vista Unit Owners Association (collectively "Association"), and represents:

1.    On November 3, 2011 ("Petition Date"), Young filed a voluntary petition under Chapter 13 of the Bankruptcy Code at No. 11-26777 JAD ("Bankruptcy"). On the Petition Date Young owned condominium unit "A" of 1200 Buena Vista Condominiums together with a 37% interest in the common elements appurtenant thereto ("Condominium").

2.    The Association filed a Proof of Claim in the Bankruptcy asserting it holds a claim of $47,555.05 and asserts its claim is a lien, or secured claim, on the Condominium. Part of its claim is represented by Judgment against Young in the Court of Common Pleas of Allegheny Count at AR No. 06-4601 in the original amount of $14,900.00 plus accruing interest ("Judgement").

3. Young commenced an Adversary Proceeding in the Bankruptcy at No. 11-2606 JAD seeking, under Section 506 of the Bankruptcy Code, to partially avoid and reduce secured claim of the Association on Young's Condominium ("Adversary Proceeding"). Young asserted that the fair market value of the Condominium was $25,000.00 in the Amended Complaint filed in the Adversary Proceeding.

4. The Association filed an Answer in the Adversary Proceeding and asserted that the fair market value of the Condominium was $50,000.00.

5. It is likely Young and the Association will incur substantial legal fees and costs in further prosecution of the Adversary Proceeding and the result of that Proceeding is uncertain.

6. Disputes between Young and the Association have also arisen related to the handling of a future sewer repair, a roof repair and Association meetings, as set forth in more detail in the Settlement Agreement (collectively "Other Disputes").

7. To avoid further legal expenses and to avoid the uncertainty and cost of the trial in the Adversary, and to settle the Other Disputes, Young and the Association have reached a settlement, the essential terms of which state:

a. **Secured Claim**. The Association holds an allowed secured claim against the Condominium of $12,500.00 as of the Petition Date. The Association and Young shall execute a Stipulation or Consent Order in the Adversary Proceeding agreeing that Association holds an allowed secured claim against the Condominium of $12,500.00 and the remainder of its claim on the Petition Date, $35,055.05 is avoided as a secured claim, or lien, on the Condominium. Any funds received by the Association on its claim pursuant to Young's Chapter 13 Plans dated November 3, 2011 and April 27, 2012 shall be retained by the Association and credited to its allowed secured claim of $12,500.00. The remaining, unpaid portion of the Association's allowed secured claim shall be paid in full, with six percent interest, pursuant to amended Chapter 13 plan to be filed by Young within fifteen days of the Bankruptcy Court approving this Settlement ("Amended Plan"). The Association shall satisfy the Judgement when Young pays the allowed secured claim of the Association in full and Young receives a Chapter 13 discharge.

b. *<u>Unsecured Claim.</u>* The Association has an allowed, non-priority unsecured claim

against Young on the Petition Date of $35,055.05. The unsecured, non-priority, claim of the Association shall also be paid pursuant to the Amended Plan on the same pro rata basis as other unsecured, non-priority creditors.

c. *No Objection to Plan* Within fifteen (15) days of an Order approving this Settlement, Young shall file a Chapter 13 plan ("Amended Plan") which shall propose tot pay the Association's claims according to the terms of this Settlement. If the Association's secured claim and unsecured claims are treated as provided in this Settlement, Association not shall object to the Amended Plan. Nothing in this Settlement shall preclude the Association from filing an Objection to the Amended Plan or a Motion for Allowance and Payment of an Administrative Claim if Young fails to pay any post-petition assessment made by the Association against Young or his Condominium.

d. *No Survival of this Agreement on Conversion or Dismissal* Paragraphs 1, 2 and 3 of this Agreement (sub-paragraphs a-c, above) shall be rendered null and void if the Bankruptcy is dismissed or converted to a Chapter 7 proceeding.

e. *Future Sewer Repair*. Young will cooperate with 1200 Buena Vista Condominiums, and 1200 Buena Vista Unit Owners Association (collectively the "Association") by allowing access to his condominium unit to the enable the Association's plumber to do necessary, future sewer repairs. If the sewer repair is covered by insurance, Young shall pay his pro rata portion, or 37%, of the insurance deductible of $1,000.00, or $370.00, related to this repair, within 15 days of the completion of the sewer repair. If the sewer repair is covered by not insurance, Young shall pay his pro rata portion, or 37%, of the sewer repair when the invoice for the sewer repair is due.

f. *Roof Repair to Young's Condominium*-Within 30 days of Bankruptcy Court approval of this date of this Agreement, the Association shall undertake the repair of the roof of Young's condominium unit pursuant to the Homecrafters Building and Remolding, Inc. Contract Agreement proposal of $9,300.00 ("Proposal Cost"). Young shall pay his pro rata share, 37%, of the Revised Proposal Cost, which shall be paid before the commencement of the repair. The balance of the Proposal Cost, or 63%, shall be paid by the other Unit Owners of the Association or be paid the Association, but Young shall not be assessed by the Association for this portion of the Proposal Cost. Nothing in this paragraph shall preclude the Association from using the funds it retains under paragraph 1 of this Agreement (sub-paragraph a, above) to pay the 63% portion of the Proposal Cost.

g. *Association Meeting for 2013-2014.* In the next two calendar years, 2013 and 2014, the Association shall hold annual meetings to conduct its regular business and Young, Paul Georg, the other unit owner in the Association, Phillip S. Simon, counsel for Young, and Roger Matthews, co-counsel for the Association shall be given reasonable, written notice of these meetings and invited to attend. The meetings shall take place at Roger Matthews' office unless Young and Paul Georg agree, in a writing signed by both parties, to another location. Nothing in this sub-paragraph shall be construed to otherwise

3

modify the By-Laws of the Association.

The full terms of the settlement are set forth in a "Settlement Agreement" which is attached as **Exhibit "1"** ("Settlement"). See, paragraphs 1-7 of Exhibit "1".

8. The United States Court of Appeals for the Third Circuit has stated four factors for consideration by the Bankruptcy Court in approving a settlement, which are:

   a. the probability of success in the litigation;
   b. the likely difficulties in collection;
   c. the complexity of the litigation involved and the expense delay necessarily attending it; and
   d. the paramount interest of the creditors;

*In re Martin (Myers v. Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996).

9. The Settlement is fair and equitable and in the best interest of the Debtor and the estate, because:

   a. the Debtor will receive most what he could accomplish in the Adversary Proceeding without further legal cost and expense;

   b. the Settlement defines and limits payment of Association's claims to terms that are realistic for the Debtor to pay in a Chapter 13 Plan, given his financial position;

   c. the Settlement limits the Objection of the Association to the Debtor's Amended Chapter 13 Plan, as long as the Debtor's Amended Chapter 13 Plan complies with the Settlement; and

   d. Settlement resolves the Other Disputes which have been a source of animosity, distress and concern between the parties.

WHEREFORE, the Debtor, Bradley J. Young, respectfully requests the Court to enter an Order approving the Settlement between him and 1200 Buena Vista Condominiums and 1200 Buena Vista Unit Owners Association, as set forth in this Motion and **Exhibit "1"**, attached hereto, and for such other relief as is appropriate under the circumstances.

Respectfully submitted,

/s/ Phillip S. Simon
Phillip S. Simon
Pa. I.D. No. 36026

603 Washington Road, Suite 401
Pittsburgh, PA  15228
412-440-4470  fax 412-531-0874
simonlink1@verizon.net

Counsel for the Debtor, Bradley J. Young

5185x062c