## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement" and/or "Settlement") is entered into this _27th_ day of November, 2012 by and between:

Bradley J Young, ("Young") a Chapter 13 debtor who filed bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania at No. 11-26777 - JAD ("Bankruptcy") on November 3, 2011 ("Petition Date"); and

1200 Buena Vista Condominiums and 1200 Buena Vista Unit Owners Association, who are creditors of Young with an address of c/o S. James Wallace, Esq. 707 Grant Street, Suite 1306, Pittsburgh, PA (collectively "Association");

(collectively the "Parties"):

WITNESSETH:

WHEREAS, by Deed dated November 1, 1991 Young was conveyed sole interest in condominium unit "A" of 1200 Buena Vista Condominiums together with a 37% interest in the common elements appurtenant thereto, commonly know as Block/Lot No. 23-N-41-01 ("Condominium") and by such ownership became liable for assessments of Association on his Condominium;

WHEREAS, Young filed bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania at No. 11-26777 JAD ("Bankruptcy") on November 3, 2011 ("Petition Date");

WHEREAS, the Association filed a Proof of Claim in the Bankruptcy asserting it holds a claim of $47,555.05 against Young and asserts its claim is a lien, or secured claim, on the Condominium. Part of its claim is represented by Judgment in faovr of the Association and against Young in the Court of Common Pleas of Allegheny County at AR No. 06-4601 in the original amount of $14,900.00, plus accruing interest ("Judgement");

WHEREAS, Young commenced an Adversary Proceeding in the Bankruptcy at No. 11-2606 JAD seeking, under Section 506 of the Bankruptcy Code, to partially avoid and reduce the allowed secured claim of the Association on Young's Condominium ("Adversary Proceeding");

WHEREAS, Young asserted that the fair market value of the Condominium was $25,000.00;

WHEREAS, the Association filed an Answer in the Adversary Proceeding and asserted that the fair market value of the Condominium was $50,000.00;

WHEREAS, Young and Association have incurred and will incur substantial legal fees and costs in further prosecution of the Adversary Proceeding and the result of that Proceeding is uncertain;

EXHIBIT 1

WHEREAS, the sewer under the condominiums in Association is in need of immediate repair and the repair will require access through Young Condominium and temporary destruction of a portion of the floor on Young's Condominium. The Association has been advised that its insurance company will pay for the sewer repair, but not the cost of the insurance deductible, which is $1,000.00. A dispute as to how to handle the sewer repair has arisen between Young and the Association;

WHEREAS, the roof on Young's Condominium is immediate need of repair and Young has obtained a proposal to repair the roof for $9,300.00 from Homecrafters Building and Remolding, Inc. The roof is a "common element" under the Bylaws of the Association and the Association is obligated to repair "common elements" of the Association. A dispute as to how to handle the roof repair has arisen between Young and the Association;

WHEREAS, Young and Association have had disputes over notice of, invitation to, and the right to attend, Association meetings;

WHEREAS, Young and Association have reached a full and final settlement of all of forgoing disputes, including those related to the Adversary Proceeding, the Association's Claim, the sewer repair, the roof repair, and the Association meetings for 2013 and 2014;

NOW THEREFORE, in consideration of the promises and mutual covenants contained herein, the Parties, intending to be bound, agree:

1. **Secured Claim**. The Association holds an allowed secured claim against the Condominium of $12,500.00 as of the Petition Date. The Association and Young shall execute a Stipulation or Consent Order in the Adversary Proceeding agreeing that Association holds an allowed secured claim against the Condominium of $12,500.00 and the remainder of its claim on the Petition Date, $35,055.05 is avoided as a secured claim, or lien, on the Condominium. Any funds received by the Association on its claim pursuant to Young's Chapter 13 Plans dated November 3, 2011 and April 27, 2012 shall be retained by the Association and credited to its allowed secured claim of $12,500.00. The remaining, unpaid portion of the Association's allowed secured claim shall be paid in full, with six percent interest, pursuant to amended Chapter 13 plan which shall be filed by Young within fifteen days of the Bankruptcy Court approving this Settlement ("Amended Plan"). The Association shall satisfy the Judgement when Young pays the allowed secured claim of the Association in full and Young receives a Chapter 13 discharge.

2. **_Unsecured Claim._** The Association has an allowed, non-priority unsecured claim against Young on the Petition Date of $35,055.05. The unsecured non-priority, claim of the Association shall also be paid pursuant to the Amended Plan on the same pro rata basis as other unsecured, non-priority creditors.

3. **_No Objection to Plan_** Within fifteen (15) days of an Order approving this Settlement, Young shall file a Chapter 13 plan ("Amended Plan") which shall propose to pay the

Association's claims according to the terms of this Settlement. If the Association's secured claim and unsecured claims are treated as provided in this Settlement, Association not shall object to the Amended Plan. Nothing in this Settlement shall preclude the Association from filing an Objection to the Amended Plan or a Motion for Allowance and Payment of an Administrative Claim if Young fails to pay any post-petition assessment made by the Association against Young or his Condominium.

4. **_Limited Survival of this Agreement on Conversion or Dismissal_** Paragraphs 1, 2 and 3 of this Agreement shall be rendered null and void if the Bankruptcy is dismissed or converted to a Chapter 7 proceeding.

5. **_Future Sewer Repair_**. Young will cooperate with 1200 Buena Vista Condominiums, and 1200 Buena Vista Unit Owners Association (collectively the "Association") by allowing access to his condominium unit to the enable the Association's plumber to do necessary, future sewer repairs. If the sewer repair is covered by insurance, Young shall pay his pro rata portion, or 37%, of the insurance deductible of $1,000.00, or $370.00, related to this repair, within 15 days of the completion of the sewer repair. If the sewer repair is covered by not insurance, Young shall pay his pro rata portion, or 37%, of the sewer repair when the invoice for the sewer repair is due.

6. **_Roof Repair to Young's Condominium_**-Within 30 days of this date of this Agreement, the Association shall undertake the repair of the roof of Young's condominium unit pursuant to the Homecrafters Building and Remolding, Inc. Contract Agreement proposal of $9,300.00 ("Proposal Cost"). Young shall pay his pro rata share, 37%, of the Revised Proposal Cost, which shall be paid before the commencement of the repair. The balance of the Proposal Cost, or 63%, shall be paid by the other Unit Owners of the Association or be paid the Association, but Young shall not be assessed by the Association for this portion of the Proposal Cost. Nothing in this paragraph shall preclude the Association from using the funds it retains under paragraph 1 of this Agreement to pay the 63% portion of the Proposal Cost.

7. **_Association Meeting for 2013-2014._** In the next two calendar years, 2013 and 2014, the Association shall hold annual meetings to conduct its regular business and Young, Paul Georg, the other unit owner in the Association, Phillip S. Simon, counsel for Young, and Roger Matthews, co-counsel for the Association shall be given reasonable, written notice of these meetings and invited to attend. The meetings shall take place at Roger Matthews' office unless Young and Paul Georg agree, in a writing signed by both parties, to another location. Nothing in this sub-paragraph shall be construed to otherwise modify the By-Laws of the Association.

8. **_Effectiveness of Agreement_**. The Parties agree and acknowledge that the obligations of this Agreement are fully contingent upon the Court's approval of the Agreement in its entirety. If the Court issues an Order or declaration disapproving the entire Agreement and no appeal is filed, the Agreement (except as provided in the next sentence), is terminated automatically and all rights and obligations created by the Agreement are null and void. If any Party appeals an Order or declaration disapproving the Agreement in its entirety, the Agreement is not terminated automatically, and remains in effect for the duration of the appeal and any

subsequent appeal. If an appeal of a Court Order or declaration disapproving the Agreement in its entirety results in approval of the Agreement in its entirety, the Agreement is valid and binding on all Parties. If, however, an appeal of a Court Order or declaration disapproving the Agreement is affirmed, the Agreement is terminated and all rights and obligations created by the Agreement are null and void.

        9.      **_Integration & Severability._** The Parties agree that the obligations of this Agreement are fully integrated and not severable, and that a finding that any provision of this Agreement is invalid, void, or unenforceable shall materially affect the entire intent and purpose of the Agreement. If the Court issues an Order or declaration (i) modifying the Agreement in any manner, or (ii) declaring any provision of the Agreement invalid, void, or unenforceable, and no appeal is filed, any Party shall have the right, in the exercise of his sole discretion, to void this entire Agreement within ten (10) business days after the expiration of any Party's right to appeal the Order, by sending written notice, by certified mail, to every other Party. If a timely election to void the Agreement is exercised, this Agreement is terminated and all rights and obligations created by it are null and void. If any Party appeals a Court Order or declaration modifying the Agreement or declaring any portion thereof invalid, void, or unenforceable, and the appeal results in the Agreement being finally approved in its original form, the Agreement is valid and binding on all Parties. If, however, that such appeal finally results in (i) affirmation of the Order or declaration modifying the Agreement or declaring any portion invalid, void, or unenforceable, or (ii) any other modification of the Agreement or declaration that any portion of the Agreement is invalid, void, or unenforceable, any Party shall have the right to void the Agreement by sending written notice, by certified mail, to every other Party within ten (10) business days of receiving actual notice of the final adjudication. If no Party exercises the right to void the Agreement, such inaction is a waiver of the right to void the Agreement and a ratification of the modifications to the Agreement.

        10.      **_Warrant of Rights & Authority._** The Parties represent and warrant that no other persons or entities have, or have had, any interest in the claims, demands, obligations, causes of action or potential causes of action referred to in this Agreement except as otherwise set forth herein, that each party has the sole right and exclusive authority to execute this Agreement and receive the consideration specified herein, as applicable, and that no party has sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, causes of action or potential causes of action referred to herein. Each Party hereto represents and warrants to the others that (i) such Party has all requisite power and authority to enter into and carry out all obligations undertaken by such Party in connection herewith, and (ii) this Agreement has been duly authorized and delivered in accordance with applicable laws, and is a valid and binding obligation of such Party.

        11.      **_Entire Agreement and Modification._** The Parties expressly agree that this Agreement constitutes a single integrated contract expressing their entire agreement. The Parties agree that no promises or inducements have been made except as set forth herein and that there are no other agreements, written or oral, express or implied, between the Parties concerning the subject matter hereof except as set forth in this Agreement. This Agreement shall not be supplemented, amended, modified, revoked or terminated except by a written instrument duly

executed by the Party or Parties to be bound thereby. The failure of any party to insist upon strict performance of any of the provisions of the Agreement shall not be construed as a waiver of any subsequent default.

12.     ***Governing Law and Interpretation.*** This Agreement is to be enforced and construed in accordance with the laws of the Commonwealth of Pennsylvania. This Agreement shall be broadly construed to effectuate its intended purpose of finally settling and resolving the litigation and all claims heretofore existing or potentially existing between the Parties. The Parties acknowledge and agree that this Agreement is the product of negotiation and is not be construed more strictly against one Party than against another Party regardless which Party may have drafted the Agreement or any of its terms. The Parties agree that the captions in this Agreement are solely for reference and the convenience of the Parties, and shall not limit, expand or alter the contents of any provision of this Agreement.

13.     ***Counterparts.*** This Agreement may be executed in counterparts, each of which will be deemed an original upon execution. Except as otherwise stated in this Agreement, all the provisions of this Agreement shall be binding upon the respective heirs, successors and assigns of the Parties hereto.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, have executed this Settlement Agreement as of the date first written:

> BRADLEY J. YOUNG
>
> BY: /s/ Bradley J. Young
> Bradley J. Young
>
> and
>
> BY: /s/ Phillip S. Simon
> Phillip S. Simon, his counsel
>
> 1200 BUENA VISTA CONDOMINIUMS AND
> 1200 BUENA VISTA UNIT OWNERS
> ASSOCIATION
>
> BY: /s/ Paul Georg
> Their representative
>
> and
>
> BY: /s/ S. James Wallace
> S. James Wallace, their co-counsel

5185x59b